UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
TOBIAS WEISS and                                            :
GERTRUDE O. WEISS,                                          :
                                                            :
                    Plaintiffs,                             :
                                                            :      04 Civ. 9803 (GEL)
         -v-                                                :
                                                            :      **OPINION AND ORDER**
EL AL ISRAEL AIRLINES, LTD.,                                :
                                                            :
                    Defendant.                              :
                                                            :
------------------------------------------------------------x

Tobias Weiss, Stamford, CT, for plaintiffs.

Lawrence Mentz, Kaplan, von Ohlen & Massamillo,
LLC, New York, NY, for defendant.

GERARD E. LYNCH, District Judge:

      Plaintiffs Tobias and Gertrude Weiss bring this action against El Al Israel Airlines ("El

Al") to recover losses that they incurred as a result of their being involuntarily denied boarding,

or "bumped," from a flight from New York to Jerusalem. They bring this action under

regulations promulgated under the Federal Aviation Act, 14 C.F.R. § 250.1 et seq. ("Federal

Regulations"), and under state tort and contract law.[1] El Al has moved to dismiss the complaint,

contending that plaintiffs' claims are preempted by the Montreal Convention[2] and the Airline

---

[1] To the extent that plaintiffs claim that their action arises under 49 U.S.C. § 1374(b), El Al properly notes that that statute was repealed before the events described in the Complaint, and it consequently has no applicability here.

[2] Convention for the Unification of Certain Rules Relating to International Transportation by Air Done at Montreal on 28 May 1999, reprinted in S. Treaty Doc. No 106-45, available at 1999 WL 33292734.

Deregulation Act ("ADA"), and that plaintiffs have no cause of action under the Federal Regulations. Plaintiffs in response have submitted a motion to strike, which for the most part simply opposes El Al's motion to dismiss, but also raises certain issues of service and jurisdiction that the Court separately addresses. For the reasons set forth below, El Al's motion to dismiss will be denied in part and granted in part, and plaintiffs' motion to strike will be denied.

## BACKGROUND

The facts as alleged in the Complaint are as follows: Plaintiffs purchased tickets at a combined price of $2,434 from El Al for round-trip transportation between New York Kennedy airport and Jerusalem Ben-Gurion airport, departing New York on March 31, 2004, at 6.30 p.m. (Compl. ¶¶ 6-7.) They arrived at Kennedy airport on the scheduled date of departure a little more than one hour before the flight and were cleared by airline security, but were involuntarily denied boarding because the flight had been oversold by the airline and, as a result, their reserved seats given to other passengers. (Id. ¶ 8.) Plaintiffs, in a manner familiar to any regular flyer, had been "bumped."[3]

El Al subsequently placed the bumped passengers, including plaintiffs, on a standby list to enable them to obtain seats on future El Al flights in the coming days in the event that seats opened up. (Id. ¶ 11.) El Al also took an extra $100 from plaintiffs in order to upgrade their seats, should they get seats, to business class. (Id.)

---

[3] Bumping is an airline industry practice whereby passengers are denied seats due to intentional overselling, which is intended to minimize the number of empty seats due to cancellations. Nader v. Allegheny, 426 U.S. 290, 292 (1976); see also Elliott Blanchard, Terminal 250: Federal Regulation of Airline Overbooking, 79 N.Y.U. L. Rev. 1799 (2004) (discussing economic incentives that gave rise to industry practice of overselling).

As a result of their standby status, plaintiffs were induced to remain at the airport for two days in the hope of obtaining seats on a subsequent flight. (Id. ¶ 21.) They spent the time moving about the airport attempting to comply with the airline's procedures for standby passengers. (Id.) During that period, plaintiffs allege that they suffered physical fatigue and exhaustion from all the activity. (Id. ¶ 22.) Plaintiffs also allege that they were treated in a "wanton, oppressive, indifferent, and uncaring" manner by the airline's employees, who "shunt[ed] the passengers around from place to place." (Id. ¶ 23.) Finally, plaintiffs allege that they suffered "emotional stress, and worry and anxiety, and great inconvenience in being denied the transportation on which they depended." (Id. ¶ 24.)

However, plaintiffs' and the airline's efforts were of no avail and, after two days without obtaining seats on any subsequent flight, plaintiffs decided to fly to Jerusalem on a different airline. (Id. ¶ 12.) Consequently, plaintiffs were unable to make use of the round-trip tickets they had purchased from El Al. To date, plaintiffs have not received a refund for the cost of these tickets nor have they received any compensation for being "bumped" from their reserved seats on the March 31 flight. (Id. ¶¶ 17-18.)

## DISCUSSION

I. Subject Matter Jurisdiction

An issue that is addressed solely (and only barely) in connection with plaintiffs' motion to strike, and which the Court has an independent obligation to address at the outset, is subject-matter jurisdiction. This issue can be addressed in short order, as there is clearly jurisdiction

over the case, both under the diversity jurisdiction statute, 28 U.S.C. § 1332,[4] and under sections 1331 and 1367. There is federal question jurisdiction, under section 1331, over plaintiffs' claim arising under the Federal Regulations. That being the case, the Court has jurisdiction over plaintiffs' remaining state law claims under the supplemental jurisdiction statute, section 1367.[5]

II.     El Al's Motion to Dismiss

El Al moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), contending that plaintiffs' claims are preempted by the Montreal Convention and the ADA, and that there is no right of action under the Federal Regulations.

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). The Court will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Beyond the facts in the complaint, the Court may consider, inter alia,

---

[4] It appears from the Complaint that there is diversity of citizenship, and plaintiffs allege damages in excess of $75,000.

[5] While the Court ultimately dismisses plaintiffs' federal claim below, holding that there is no private right of action, express or implied, under the Federal Regulations, that dismissal does not mean that there was no federal question jurisdiction over the claim to begin with. See In re Stock Exchanges Options Trading Antitrust Litig., 317 F.3d 134, 150 (2d Cir. 2003) ("[W]here a complaint is so drawn as to seek recovery directly under the Constitution or laws of the United States, . . . the district court has subject matter jurisdiction unless the federal claim clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such a claim is wholly insubstantial and frivolous." (quotation marks and citations omitted)). And the dismissal of the federal claim does not otherwise defeat this Court's continuing jurisdiction over the related state law claims. See 28 U.S.C. § 1367(c)(3) (court may retain jurisdiction over case despite dismissal of all claims over which it had original jurisdiction).

"any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (2d Cir. 1991).

   A.   The Montreal Convention

El Al's first contention is that the Montreal Convention preempts plaintiffs' federal and state law claims. The Montreal Convention, which came into force in the United States in November 2003, but which has not been ratified by Israel, is the successor of the Warsaw Convention.[6] The Warsaw Convention was an international treaty created in the early days of air travel, which sought to create the conditions under which the then extremely fragile airline industry could grow, by limiting airline accident liability. See Andreas Lowenfeld and Allan Mendelsohn, The United States and the Warsaw Convention, 80 Harv. L. Rev. 497, 498-502 (1967). The "cardinal purpose of the Warsaw Convention [was] to 'achieve [international] uniformity of rules governing claims arising from international air transportation.'" El Al Israel Airlines v. Tseng, 525 U.S. 155, 169 (1999), quoting Eastern Airlines, Inc. v. Floyd, 499 U.S. 530, 552 (1990).

The Montreal Convention is "an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention." Ehrlich v. American Airlines, Inc., 360 F.3d 366, 371 n.4 (2d Cir. 2004). The primary aim of its drafters was to "'harmonize the hodgepodge of supplementary amendments and intercarrier agreements'" that made up the Warsaw Convention. Id., quoting Carl E. Fumarola, Note, Stratospheric Recovery: Recent and

---

   [6] Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876, reprinted at 49 U.S.C.A. § 40105.

Forthcoming Changes in International Air Disaster Law and Its Effect on Air Terrorism Recovery, 36 Suffolk U. L. Rev. 821, 835 (2003). In addition,

> whereas the primary aim of the contracting parties to the [Warsaw] Convention was to limit the liability of air carriers in order to foster the growth of the . . . commercial aviation industry, the contracting parties to the Montreal Convention expressly approved that treaty because, among other reasons, they recognized the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution.

Id. (internal citations and quotation marks omitted). Thus, the Montreal Convention represents a significant shift away from a treaty that primarily favored airlines to one that continues to protect airlines from crippling liability, but shows increased concern for the rights of passengers and shippers.

Despite its newly aligned purpose, many of the provisions of the Montreal Convention closely resemble those of the Warsaw Convention. For instance, the Montreal Convention, like the Warsaw Convention, provides strict carrier liability for the following three categories of damages arising out of the international carriage of passengers or goods by airlines. Article 17 provides for carrier liability for the death or bodily injury of a passenger or the destruction, loss of or damage to her baggage, provided that the harm occurred onboard the aircraft or in the process of embarking or disembarking. Article 18 provides for damage to cargo sustained during carriage by air, subject to certain exclusions. Finally, Article 19 provides for carrier liability occasioned by delay in the carriage of passengers, baggage or cargo unless the carrier can prove that it and its servants and agents "took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures."

A key provision of the Convention is its statement of preemptive effect in Article 29:

> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention.

It is well settled that this provision means that for all air transportation to which the Convention applies, if an action for damages, however founded, falls within one the Convention's three damage provisions, the Convention provides the sole cause of action under which a claimant may seek redress for his injuries. See Tseng, 525 U.S. at 176 (interpreting Warsaw Convention); Shah v. Pan Am World Servs., Inc., 148 F.3d 84, 97-98 (2d Cir. 1998) (same); Paradis v. Ghana Airways Ltd., 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004) (noting preemptive effect of Montreal Convention is "substantially the same" as that of Warsaw Convention). Consequently, the Convention preempts all claims, whether based on federal or state law, that fall within its scope. Paradis, 348 F. Supp. at 111.

In determining whether the Montreal Convention preempts plaintiffs' claims, the Court faces two questions: First, does the Montreal Convention apply to plaintiffs' flight to Israel, even though Israel is not a party to the Convention? Second, is a claim for bumping a claim for "delay" under Article 19 of the Convention, and therefore preempted? Ultimately, the Court need not determine whether the Convention applies to plaintiffs' travel (an issue the parties have not adequately briefed, and which centers on factual issues concerning the nature of plaintiffs' tickets that cannot be discerned from the record before the Court), because it concludes that bumping, at least under the circumstances alleged in the Complaint, is not covered by the Convention.

Defendant argues that plaintiffs' bumping claims are claims for damages occasioned by delay, which are covered by Article 19 of the Convention and therefore are preempted by Article 29. Plaintiffs respond that the Montreal Convention does not apply because bumping is more accurately described as complete non-performance of contract than as delay.

The federal courts appear divided on this issue and our Court of Appeals has explicitly left the issue open. King v. American Airlines Inc., 284 F.3d 352, 361-362 (2d Cir. 2002) (declining to reach issue of whether bumping claims would fall within substantive scope of Article 19). To date only one appellate court has considered it. In Wolgel v. Mexicana Airlines, 821 F.2d 442 (7th Cir. 1987), the Seventh Circuit was called upon to decide whether passengers' claims for discriminatory bumping on the outbound leg of their round-trip journey to Mexico, brought under the now-repealed 49 U.S.C. § 1374(b), were barred by a two-year statute of limitations provision contained in the Warsaw Convention. As in this case, the court's decision turned on the question whether a bumping claim should properly be characterized as a claim for delay under Article 19 of the Warsaw Convention. The court found that it should not and that bumping claims were properly understood not as claims for delay, but as claims for complete nonperformance of the contract between the passenger and airline.

Central to the court's argument was an investigation into the drafting history of the Warsaw Convention.[7] After reviewing the record of the Second International Diplomatic Conference on Private Aeronautical Law, the drafting conference of the Warsaw Convention, the

---

[7] The Supreme Court has held that inquiry into a treaty's drafting history is proper because "'[t]reaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations and the practical construction adopted by the parties.'" Air France v. Saks, 470 U.S. 392, 396 (1985), quoting Choctaw Nation of Indians v. United States, 318 U.S. 423, 431-32 (1943).

Seventh Circuit determined that

> it became clear among the delegates that there was no need for a remedy in the Convention for total nonperformance of the contract, because in such a case the injured party has a remedy under the law of his or her home country. The delegates therefore agreed that the Convention should not apply to a case of nonperformance of a contract.

Wolgel, 821 F.2d at 444. The court held that bumping was a case of non-performance of contract that was not covered by the Convention, noting that the appellants in that case were not "attempting to recover for injuries caused by their delay in getting to Acapulco. Rather their complaint [was] based on the fact that, as far as the record shows, they never left the airport." Id. at 445.

The court in Wolgel relied in part on an earlier decision, Mahaney v. Air France, 474 F. Supp. 532 (S.D.N.Y. 1979), which El Al relies upon here to support its contention that all cases of bumping are considered claims for damages due to delay. Like Wolgel, Mahaney involved the question whether a bumping claim is covered by the Warsaw Convention; it also involved a claim by the plaintiff for additional transportation costs she incurred due to her late arrival, after she finally obtained a flight. The court in Mahaney distinguished between the transportation claim and the bumping claim. The court held that the claim for additional transportation costs was properly considered a claim for delay damages because it was predicated on the plaintiff's late arrival at her destination. Id. at 534. However, the court held that the bumping claim was *not* a claim for delay because it did not stem from delay but rather from the airline's failure to perform the contract in the first place. Id. at 535. Thus, contrary to El Al's assertion, this case does not stand for the proposition that bumping claims are claims for delay.

9

El Al also cites other cases in which courts in this jurisdiction have found claims arising out of passenger bumping to be claims for delay, including Paradis v. Ghana Airways Ltd., 348 F. Supp. 2d 106 (S.D.N.Y. 2004). The Paradis court ruled that the breach of contract claims brought by a passenger after the cancellation of his return flight from Sierra Leone to New York were preempted by the Montreal Convention, basing its decision on the following factors. First, the court noted that the message of the Supreme Court in El Al Israel Airlines v. Tseng was "that the application of the Convention is not to be accomplished by a miserly parsing of its language," and that this cast doubt on Wolgel's distinction between bumping and delay. Paradis, 348 F. Supp. 2d at 113, quoting King v. American Airlines, Inc., 146 F. Supp. 2d 159, 162 (N.D.N.Y. 2001), aff'd on other grounds, 284 F.3d 352 (2d Cir. 2002). Second, the Paradis court distinguished Wolgel on two grounds: (a) the passengers in Wolgel were bumped from their outbound flight, whereas the passenger in Paradis was on his return leg when the cancellation occurred, and (b) the passengers in Wolgel had received no alternative transportation or compensation, whereas the passenger in Paradis, in light of the airline's attempts to secure him alternative transportation, had acted too hastily in repudiating his ticket to claim complete non-performance by the airline. Cf. Sassounia v. Olympic Airlines, 769 F. Supp. 537 (S.D.N.Y. 1991) (holding bumping constituted delay where airline provided substitute transportation for plaintiff).

The Court is skeptical of the Paradis court's distinction between outbound and return flights; that the airline provided one flight according to contract does not necessarily render the failure to provide carriage on another flight a mere delay rather than a total failure to perform. In any event, to the extent the distinction has force, since this case concerns the outbound leg of a

10

round-trip journey, it is analogous to Wolgel rather than to Paradis. The distinction between proper and improper repudiation, on the other hand, will certainly have bearing on this case. However, the essentially factual questions of whether El Al adequately offered alternative transportation and/or whether plaintiffs prematurely repudiated the contract have not been briefed by the parties, and cannot be addressed on a motion to dismiss.[8] The Court must, however, wrestle with Paradis's suggestion that Wolgel may no longer be valid in light of the Supreme Court's "message" in Tseng.

While Tseng (which addressed the altogether different question of whether Article 17 of the Warsaw Convention applied to all personal-injury claims formally within the ambit of its terms) counseled against a "miserly" construction of the Warsaw Convention's terms, it more importantly recognized that the proper interpretation of the treaty's terms involves consideration not only of the text, but also the drafting history and post-ratification understanding of the contracting parties, 525 U.S. at 167, and it emphasized the importance of achieving, to the extent possible, international uniformity of rules governing claims arising from international air transportation, id. at 169.

---

[8] Defendant also relies on two other cases that do not have a bearing on the case at hand. In Fields v. BWIA Int'l Airways, No. 99-CV-2493, 2000 WL 1091129 (E.D.N.Y. July 7, 2000), the court held that the plaintiff's claims were preempted by the Warsaw Convention because, as in Mahaney, it found that the damages sought were for those occasioned exclusively by late arrival at the plaintiff's destination. Similarly, the Seventh Circuit in Wolgel explicitly rejected the reasoning of the district court in Harpalani v. Air India, Inc., 622 F. Supp. 69 (N.D. Ill. 1985), stating that it was based on a misinterpretation of the ruling in Mahaney. Wolgel, 821 F.2d at 445 ("In reaching its conclusion the court did not examine the legislative history of the treaty, but simply relied on Mahaney and on Hill v. United Airlines, 550 F. Supp. 1048 (D. Kan. 1982). Neither case supports the proposition that Article 19 of the Convention provides a cause of action for bumping.").

To these ends, the Wolgel court's interpretation of Article 19 is supported by the history of the drafting of the Montreal Convention. The minutes of the International Conference on Air Law at Montreal, 10-28 May 1999, indicates that the drafters of the Montreal Convention were aware of the difficulty in defining delay, and were willing to leave the determination of what does and does not constitute delay to the national courts. The minutes reflect that upon request from the Representative of China to incorporate a previously drafted definition of delay into what was to become Article 19, the Chairman of the Conference, supported by the Chairman of the Drafting Committee, commented that because of the impossibility of drafting a precise definition for delay, the proposed definition would be struck in favor of leaving the definition to the national courts. 1 Minutes of the Int'l Conference on Air Law ¶¶ 10-12 (Montreal, May 10-28, 1999). The academic literature indicates that the courts that have dealt with this question in other signatory countries have almost uniformly accepted that bumping constitutes contractual nonperformance redressable under local law and not delay for which the Convention supplies the exclusive remedy. See Lawrence Goldhirsch, The Warsaw Convention Annotated: A Legal Handbook 109 (2000) ("It is almost universally agreed that the failure to board a passenger with a confirmed reservation gives rise to damages [for non-execution of contract]. In one German case, the court permitted unlimited damages, based on the theory that the practice is a breach and non-execution of the contract of carriage, in which case the Convention would not apply. Canada also appears to view denied boarding as non-execution of the contract and outside the Convention . . . . Only in the U.S.A. is it unclear if overbooking is a non-performance of the contract or a mere delay."); Trevor Philipson QC et al., Carriage by Air 123 (2001) ("The decisions in the US [on whether "bumping" is delay or non-performance] are conflicting . . . The

12

weight of authority in other jurisdictions, including Canada, Germany, Italy and France, is in line with Wolgel in treating bumping and other cases of non-performance of the contract of carriage as outside the scope of the Convention.").

Thus, the drafting history indicates that the drafters of the Montreal Convention intended that the national courts would determine the meaning of "delay," and national courts have almost universally accepted Wolgel's interpretation of bumping as contractual non-performance and not delay. Consequently, in light of the interest in international uniformity announced in Tseng, and the greater focus on consumer protection intended in the Montreal Convention, plaintiffs' bumping claims should be read as grounded in a cause of action for non-performance of contract and not delay. They are, therefore, not preempted by the Montreal Convention.[9]

B. The ADA

El Al next contends that even if plaintiffs' claims are not preempted by the Montreal Convention, they are preempted by the ADA, which amended the FAA to place exclusive legislative and regulatory authority in the aviation context in the hands of the federal government. The current version of the preemption provision, ADA § 105, provides in relevant part that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. §

---

[9] In addition to federal and state law claims for bumping, plaintiffs assert the violation of various technical notice requirements in the Federal Regulations (Count I), charges clearly outside the purview of the Montreal Convention. Plaintiffs also assert claims against El Al that sound in tort and arise not only from the failure to honor plaintiffs' tickets but also ill-treatment received by plaintiffs during their two-day stay at JFK Airport (Count II). The Court need not determine whether Count II is viable under the Montreal Convention because, as discussed in Part II.B, infra, it is clearly preempted by the ADA.

41713(b)(1).[10]   Defendant argues that the Supreme Court's decision in <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374 (1992), controls this case.  The Court in <u>Morales</u> held that the plain meaning of the term "related to" in section 105 is broad and that the words of the ADA "express a broad preemptive purpose."  <u>Id</u>. at 383.  Consequently, it held that section 105 preempted state suits with any "connection with or reference to airline rates, routes or services."  <u>Id</u>. at 384.

However, in a subsequent decision, <u>American Airlines Inc. v. Wolens</u>, 513 U.S. 219 (1994), the Supreme Court explained that ADA § 105 precludes only state tort law suits and does not reach suits brought under state contract law.  The Court reasoned that suits brought under state contract law do not fall under the ADA's prohibition of state "action" pertaining to airlines, because contract law concerns private agreements between private individuals.  <u>Id</u>. at 228-29 ("We do not read the ADA's preemption clause . . . to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings.").  Since an airline, like any other private entity, is free to contract out of the protections provided to it by the law, the ADA does not prevent a court from enforcing contracts between airlines and their passengers.  <u>Id</u>.

In this case, plaintiffs' state law claims sound both in tort and contract.  Count III, a breach of contract claim for bumping, is clearly not preempted by the ADA.  Count II, on the other hand, claims tort damages for physical and emotional suffering, and for "great

---

[10]  Until 1994, this provision was worded slightly differently, reading in relevant part "no state . . . shall enact or enforce any rule, law, regulation, standard or other provision having the force and effect of law relating to rates, routes, or services of any air carrier."  49 U.S.C. § 1305(a)(1) (1993).  The major Supreme Court pronouncements in this area dealt with this earlier formulation, but there is no material difference between that formulation and the one reproduced in the text.

14

inconvenience," based on the airline's treatment of plaintiffs during the two days they remained at JFK airport and the airline's "failure to furnish the transportation represented by the tickets it sold to them." (Compl. ¶¶ 25.) This claim is clearly preempted by the ADA, and is dismissed.

### C. The Federal Regulations

Finally, El Al contends, in its reply memorandum, that even if plaintiffs' claims are not preempted by the Montreal Convention or the ADA, Count I of the Complaint, which alleges that El Al violated provisions of the regulations at 14 C.F.R. § 250.1 et seq. relating to overselling practices (Compl. ¶¶ 1, 5-19), fails to state a claim because no right of action is either expressly or impliedly provided for in the governing statutes or in the regulations themselves.

As an initial matter, El Al does not argue that the regulations preempt plaintiffs' remaining contract claim, and such an argument would be meritless. The regulations themselves, their legislative history, and the courts to have interpreted them, all make clear that they indeed permit such an action. See 14 C.F.R. § 250.9(b) (stating bumped passenger shall be informed that he or she "may decline the payment [mandated under the regulations] and seek to recover damages in a court of law or in some other manner"); 47 Fed. Reg. 52980, 52982, 52987 (Civil Aeronautics Bd. Nov. 24, 1982), available at 1982 WL 153770 (Westlaw) (noting that "[i]n the exceptional case where the regulatory . . . payment is not adequate compensation, the passenger is free to refuse it and bring private legal action," and that "[t]he passenger may . . . insist on the cash payment, or refuse all compensation and bring private legal action"); West v. Northwest Airlines, 995 F.2d 148, 152-53 (9th Cir. 1993) ("The plain language of the regulation indicates that passengers retain the option . . . of pursuing compensatory damages in state court."); Stone v. Cont'l Airlines, 804 N.Y.S.2d 652, 655 (N.Y. Civ. Ct. 2005) (noting section

250.9(b) "is universally regarded as permitting a claim for contract damages which may exceed the amount of compensation offered by an airline").

A separate question is whether the regulations not only permit a state contract law action for being bumped, but affirmatively provide for a federal right of action, whether for bumping or anything else. This question turns on congressional intent, and specifically whether the statutes enforced by the regulations at issue, spanning various chapters of the Federal Aviation Act in Title 49, display Congress' intent to "create not just a private right but also a private remedy." Alexander v. Sandoval, 532 U.S. 275, 286-92 (2001). In this case, as El Al argues, no statute enforced by these regulations could, under Sandoval, be taken as creating a private remedy, nor, in fact, do the regulations even purport to provide one. See, e.g., Bonano v. East Caribbean Airline Corp., 365 F.3d 81 (1st Cir. 2004) (holding FAA in general provides no private right of action)[11]; Casas v. Am. Airlines, Inc., 304 F.3d 517 (5th Cir. 2002) (holding ADA, which amended FAA, provides no private right of action); see also Boswell v. Skywest Airlines, Inc., 361 F.3d 1263 (10th Cir. 2004) (holding provision of FAA prohibiting discrimination against handicapped persons, 49 U.S.C. § 41705, provides no private right of action); Thierry v. Delta Airlines, No. Civ. A. 94-0004, 1994 WL 88069, at *1 (E.D. Pa. March 17, 1994) ("Neither the Federal Aviation Act of 1958, 72 Stat. 731 as amended by the Airline Deregulation Act of 1978, 49 U.S.C.App. § 1301 et seq. nor the regulations issued thereunder, Title 14 CFR § 250.1 et seq.

---

[11] The Bonano court noted that the sole exception to the lack of a private right of action in the FAA is 49 U.S.C. § 46108, which expressly permits an "interested person" to commence a civil action to enforce section 41101(a)(1), which permits air carriers to provide transportation only if they hold a valid certificate authorizing such activity. Id. at 85. That provision is irrelevant to this case, except to the extent that Congress' decision to create an express private right of action in section 46108 further reinforces the conclusion that there is no implied right of action for violation of the other provisions of the FAA.

provide a cause of action for a passenger holding a ticket without confirmed reserved space (open ticket) who was refused boarding."). Instead, the sole enforcement mechanism intended for a violation of the regulations at issue (and the FAA in general) is a civil action commenced by the Secretary of Transportation or Attorney General. See, e.g., 49 U.S.C. § 46101 (permitting individual to file complaint with Secretary of Transportation for violation of FAA, and Secretary to investigate such complaints and any suspected violations); id. § 46106 (stating Secretary of Transportation may bring civil action to enforce FAA); id. § 46107 (stating Attorney General may bring civil action upon request by Secretary of Transportation); id. § 46301 (specifying civil penalties for violations of various provisions of FAA and underlying regulations). Thus, there is no private remedy for violation of the provisions of the regulations relied on plaintiffs in Count I, and that count is dismissed for failure to state a claim.

The Court recognizes that the "right of action" argument was first raised in El Al's reply memorandum, after plaintiffs had submitted their opposition papers. Thus, it might be argued that plaintiffs should be given a formal opportunity to respond to El Al's argument before the Court dismisses this claim. However, plaintiffs did not seek leave to file a sur-reply.[12] See Ruggiero v. Warner-Lambert Co., 424 F.3d 249, 252 & n.4 (2d Cir. 2005) (noting difficulty of

---

[12] In this respect, plaintiffs cannot claim the indulgence usually accorded to pro se litigants. Plaintiff Tobias Weiss, suing El Al in his own right and on his wife's behalf, is an attorney. See In re Martin-Trigona, 763 F.2d 503, 505 (2d Cir. 1985) (holding appellant, a law school graduate and frequent litigator, could "hardly expect the special allowances . . . sometimes [made] for pro se litigants who forfeit legal rights by inadvertent procedural mistakes"); Padilla v. Payco Gen. Am. Credits, Inc., 161 F. Supp.2d 264, 271 (S.D.N.Y. 2001) (refusing to extend deference to an attorney admitted to New York bar in pro se action); O'Brien v. Red Apple Group, No. 97 Civ. 6378, 1998 WL 799672, at *3 (S.D.N.Y. Nov. 17. 1998) (refusing to grant extra deference to a recent law school graduate because "[h]aving attending law school and taken the bar exam, [plaintiff] should have more legal savvy than the average pro se plaintiff").

claiming prejudice from district court's consideration of material first presented in reply where litigant "could have claimed surprise in the district court and sought to file a responsive sur-reply," and citing cases). As to whether El Al waived the argument altogether, the law is clear, and El Al cannot, by failing to raise the argument in a timely manner, vest in plaintiffs a right of action that Congress has declined to create.[13]

III. Plaintiffs' Motion to Strike

Plaintiffs' motion to strike portions of El Al's Answer does little more than disclaim the preemption arguments advanced by El Al in its motion to dismiss, and those arguments, as well as the subject matter jurisdiction issue, are addressed above. To the extent that plaintiffs object to El Al's proposed defense that service of the complaint was insufficient, El Al has affirmatively waived this defense in its opposition to plaintiffs' motion. (El Al 12(f) Mem. 7-8.)

Insofar as the Court holds that certain of the defenses made in El Al's Answer are either waived or without merit, they of course may not be further asserted in this litigation. The Court need not, however, formally grant plaintiffs' motion to strike, which as El Al's points out was filed approximately one year after the deadline for filing such motions under Rule 12(f) (El Al 12(f) Mem. 2-3), to accomplish this result, and it declines to do so. Plaintiffs' motion to strike is therefore denied as moot and untimely.

---

[13] Of course, if the Court has overlooked any authority or argument that would render its conclusion inaccurate, plaintiffs are free to seek reconsideration.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (#13) is denied in part and granted in part, and plaintiffs' motion to strike portions of El Al's Answer (#14) is denied.

SO ORDERED.

Dated: New York, New York
       May 22, 2006

                                                                          GERARD E. LYNCH
                                                                    United States District Judge